UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

       Plaintiff,

                                  No. 24-cr-20667

v.

                                  Hon. Denise Page Hood

D-5 Demecko Motton,

       Defendant.

_____/

## THE UNITED STATES' SENTENCING MEMORANDUM

**I.**     **Introduction**

Defendant Demecko Motton was arrested in possession of more than 400 grams of fentanyl and more than 500 grams of cocaine while leaving a stash location controlled by his co-defendant, Brian Brown. He now stands convicted of possession with intent to distribute cocaine and fentanyl, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(ii), (b)(1)(A)(vi), and is to be sentenced.

Motton must serve a minimum term of 10 years' imprisonment. (PSR ¶ 74). For the reasons stated in this memorandum, a Guideline-range sentence of **10 years' (120 months) imprisonment,** to be followed by 5 years of supervised release, is "sufficient, but not greater than necessary, to comply with the purposes

1

of sentencing set forth in 18 U.S.C. § 3553(a)." *United States v. Vowell*, 516 F.3d 503, 512 (6th Cir. 2008).

## II.   Facts and Procedural History

In May 2022, a DEA confidential source (CS) came forward with information about the ongoing drug trafficking activities of Motton's co-defendant, Brian Brown. (*See* PSR ¶ 8). The CS told agents that Brown was working directly with the Sinaloa Cartel to import drugs into the United States. The CS was aware that Brown distributed drugs on a national scale and estimated that he was responsible for moving more than 100 kilograms of largely heroin each month. The CS also knew that Brown managed numerous couriers and drug packagers in his various distribution hubs, including Detroit, Atlanta, Los Angeles, and locations in Kentucky, Ohio, and Tennessee. (*Id.*)

In early 2023, DEA began physically and electronically surveilling Brown and co-defendants, Dominque Glenn and Zion Speed. Through this surveillance, investigators identified two suspected stash locations frequented by Brown, Glenn, and Speed – a house in Detroit and a condo in West Bloomfield.

While conducting surveillance at the West Bloomfield stash location on September 15, 2023, investigators observed Brown outside the condo loading a bag into the rear of a Chevrolet Traverse driven by Glenn. (PSR ¶ 9). Investigators surveilled Glenn as she traveled away from the stash location and ultimately

stopped her vehicle. (*Id.*) Inside, investigators located 3.031 kilograms of cocaine hidden in a trap compartment. (*Id.*)

Brown and Speed had been following Glenn prior to the traffic stop and watched the search of her vehicle from a nearby parking lot. (*Id.*) Shortly after the cocaine seizure, Brown and Speed returned to the West Bloomfield stash location. (*Id.*)

Just hours after the traffic stop, investigators observed Brown leave the stash location with a weighted bag. (*Id.*) At the same time, agents observed a sedan pull into the condo parking lot, stopping near Speed's vehicle. (*Id.*) While agents did not observe Brown enter the vehicle, agents determined through phone location data that Brown had entered the sedan and left the area. (*Id.*)

Shortly after Brown left, Motton arrived and entered the West Bloomfield stash location. (PSR ¶ 10). Motton was inside the condo for approximately five minutes and then returned to his vehicle. (*Id.*) As he left, investigators noted that he appeared to be favoring one side of his body as he walked, suggesting that he was carrying something. (*Id.*)

Michigan State Police stopped Motton's vehicle just after he left the parking lot of the stash location. (PSR ¶ 11). Troopers located two brick shaped objects hidden in Motton's waistband. Inside his vehicle, troopers located three additional brick shaped objects. (*Id.*) The items recovered from Motton were submitted for

analysis and determined to be 989 grams of fentanyl and 4.032 kilograms of cocaine. (*Id*.)

Like Motton, Speed was also stopped leaving the stash location in possession of approximately one kilogram of cocaine. (PSR ¶ 10).

Investigators executed a search warrant at the West Bloomfield stash location almost immediately after the seizures from Motton and Speed. While no drugs were located inside, investigators found fans and air purifiers running and discovered that the basement and all tables in the condo appeared to have been wiped down with bleach.  Investigators also located mail addressed to Brown and his wife, Akia Brown, as well as multiple UPS Next Day Air boxes and shipping labels. These shipping labels tested positive for the presence of fentanyl, methamphetamine, xylazine, and amphetamine, consistent with drugs being sent through the mail.

Additionally, agents seized multiple cell phones from Glenn, Motton, and Speed. A review of these devices revealed numerous drug-related communications between Brown and his co-defendants. For example, in a text exchange from April 20, 2023, Brown directed Speed to mix and transport drugs to Demecko Motton (aka Meko).

On December 4, 2024, Motton was charged in an eight-count indictment with conspiracy to distribute controlled substances between October 2020 and March

4

2024 and possession with intent to distribute cocaine and fentanyl.  (PSR ¶ 1).

Motton pleaded guilty with a Rule 11 plea agreement on July 31, 2025 to possession

with intent to distribute cocaine and fentanyl (Counts 6 and 7). (PSR ¶ 4).  In the

plea agreement, Motton agreed that he conspired with others, as contained in Count

1 of the Indictment, to distribute and possess with intent to distribute controlled

substances between October 2020 and March 2024 and that the total amount of

narcotics attributable to him based on his own conduct, or conduct of other

coconspirators reasonably foreseeable to him, is 8 kilograms of cocaine and 989

grams of fentanyl. (PSR ¶ 5).  This quantity is the total amount drugs recovered from

Motton and his co-conspirators on September 15, 2023.

The Probation Department has calculated Motton's advisory Guideline range

to be 120-135 months' imprisonment. (PSR ¶ 74).  The government concurs with the

calculation.

### III. Sentencing Factors

In 18 U.S.C. § 3553(a), Congress provided the objectives and factors that

courts are to consider when imposing a sentence. The government addresses the most

relevant § 3553(a) factors below.

A. <u>Nature and Circumstances of the Offenses, 18 U.S.C. § 3553(a)(1)</u>

As reflected by the 10-year mandatory minimum sentence, possession with

intent to distribute fentanyl and cocaine are serious and inherently dangerous

offenses. Given the quantity of drugs that Motton retrieved from the West Bloomfield stash location, it is evident that he was a trusted member of Brown's drug trafficking organization – sent to clear out a compromised stash location. Phone evidence further suggests that Motton was a reliable courier who aided Brown in the distribution of highly potent drugs for several years.

Motton prioritized his personal profit and that of Brown's organization over the safety of the community. His actions show a conscious disregard for the law and warrant a custodial sentence of 10 years.

    B.    <u>History and Characteristics of the Defendant, 18 U.S.C. § 3553(a)(1)</u>

Motton is 52-years old. This is his second federal conviction for a drug trafficking offense. Motton previously served a 76-month custodial sentence followed by a 5-year term of supervised release for his involvement in a conspiracy to distribute crack cocaine in 2009. (PSR ¶ 39).

Motton was released from the Bureau of Prisons in 2015, and to his credit, has maintained employment operating a renovation and home repair business. (*See* PSR ¶¶ 70-71).  He also reports obtaining a CDL and HVAC certificate. (PSR ¶ 65).  He is a father and husband and maintains a close relationship with his family. (PSR ¶ 55).  Motton has no history of mental or emotional problems but previously struggled with some substance abuse issues. (PSR ¶ 59).

During his prior period of incarceration, Motton completed multiple education courses and seemingly made good use of his time. (See PSR ¶ 39).  The government hopes that Motton will resume his education while serving this sentence in the Bureau of Prisons.

    C.    <u>Seriousness of the offense, promotion of respect for the law, and just punishment for the offense, 18 U.S.C. § 3553(a)(2)(A)</u>

Drug trafficking is a dangerous crime, and it is not victimless. Drug trafficking and the subsequent use of drugs play a predominant role in the degradation of our communities and frequently contribute to violence. *See United States v. Green*, 532 F.3d 538, 549 (6th Cir. 2008) ("If a criminal defendant possesses an illegal substance with the intent to distribute that substance to others, unquestionably there are victims. The lack of an identifiable person in this case does not equate to a completely "victimless" crime. …. Society … is the victim when illegal drugs are being distributed in its communities").

By helping facilitate Brown's large-scale narcotics trafficking activities, including transporting large quantities of fentanyl and cocaine, Motton willfully contributed to the degradation of our community. He was a critical player in Brown's scheme to peddle poison in the community, destroying the lives of those who suffer from addiction.

Having served a significant sentence for a similar offense, Motton was well-aware of the consequences of his actions and chose to disregard them. It is extremely

troubling that his prior sentence – and the positive strides that Motton has made since his release – did not deter him from continuing to engage in serious criminal conduct. The seizure from Motton was not an isolated incident, but rather a part of a pattern of on-going drug trafficking activity with Brown's organization.

As such, a 10-year sentence appropriately reflects the seriousness of this offense and will promote respect for the law.

D.  Adequate Deterrence and Protecting the Public, 18 U.S.C. § 3553(a)(2)(B) and (C)

A custodial sentence of 10 years serves the interests of deterrence and the need to protect the public from drug traffickers.  For general deterrence, this sentence sends an important message that trafficking drugs, particularly with access to firearms, is an offense that merits serious penalties.

A 10-year sentence also serves the need for individual deterrence.  As discussed, Motton aided Brown in transporting significant quantities of fentanyl and cocaine, two highly potent and addictive narcotics. It is unlikely that Motton's drug trafficking activity would have stopped but for his arrest here. The government believes that this sentence will serve to sufficiently deter Motton from trafficking narcotics in the future.

Motton has expressed remorse about the negative impact that this crime will have on his life and that of his family during his interview with the Probation Department. Given this acknowledgement, the government is hopeful that despite the poor choices that Motton made in the past, he will make better choices in the future, which in turn will serve to protect the community.

## IV.    Conclusion

For the reasons above, the United States requests a 10-year custodial sentence, to be followed by five years of supervised release.

Respectfully submitted,

JEROME F. GORGON JR.
UNITED STATES ATTORNEY

*s/Caitlin B. Casey*
Caitlin B. Casey
Rajesh Prasad
Assistant United States Attorneys
211 W. Fort Street, Suite 2001
Detroit, Michigan 48226
(313) 226-9769
Caitlin.Casey@usdoj.gov

Dated: December 4, 2025

## CERTIFICATE OF SERVICE

I hereby certify that on December 4, 2025, I filed the forgoing document with

the Clerk of the Court of the Eastern District of Michigan using the ECF

system under seal and sent the defendant's attorney a copy of the filing.

*s/Caitlin B. Casey*
Caitlin B. Casey
Assistant United States Attorney