UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,　　　　CASE NO. 24-cr-20667

　　　　　　　　　　　　　　　　　Hon. Denise Page Hood

v.

D-1 BRIAN MAURICE BROWN,　　　**Filed under seal**

　　　　Defendant.

_____/

**THE UNITED STATES' RESPONSE IN OPPOSITION
TO DEFENDANT'S MOTION FOR REVOCATION OF
THE DETENTION ORDER (ECF No. 139, 140)**

Brian Brown is the leader of a drug trafficking and money laundering organization that is responsible for distributing kilogram-quantity loads of fentanyl, heroin, methamphetamine, and cocaine throughout the United States and laundering millions of dollars in drug proceeds.

An experienced drug dealer, Brown has trafficked drugs for more than three decades. Despite two prior federal convictions related to his drug operations, Brown continued to work with Mexico-based sources of supply and a network of couriers to traffic drugs. He is now charged in a drug trafficking and money laundering conspiracy spanning nearly four years, as well as with possession with intent to distribute cocaine and fentanyl. If convicted, he faces a 15-year mandatory minimum sentence.

1

Brown first sought bond in May 2025. During a detention hearing, United States Magistrate Judge Kimberly Altman properly determined that no combination of release conditions would assure the safety of the public or reasonably assure Brown's appearance as required. (ECF No. 105, PageID.342). In ordering Brown's detention, the court found "the scale" of Brown's offenses to be "almost breathtaking" and of a nature that "couldn't get more serious." (ECF No. 104, 3:13, 4:02). The court also considered Brown's extensive and "baffling" history of noncompliance while on bond in evaluating his risk of nonappearance. (ECF No. 104, 7:00; ECF No. 105, PageID.342).

In his motion for revocation of the detention order, Brown makes new arguments and attempts to minimize the seriousness of his conduct. But the analysis under 18 U.S.C. § 3142(g) is the same. Brown is a danger to the community and a flight risk. His motion should be denied.

## I.      Factual Background

### *Brown's Criminal History in the Eastern District of Michigan*

In 1999, Brown was indicted for operating a drug trafficking organization that, since 1987, sold cocaine and cocaine base. *United States v. Brown*, 332 F.3d 363, 367 (6th Cir. 2003). At trial on these charges, "the evidence overwhelmingly established" that Brown was the "source of drugs and money for the conspiracy." *Id*. at 373. Judge Rosen sentenced him to 188 months in prison (later reduced to

148 months based on the changes to the drug guidelines). He was released from custody in 2010.

Between 2014 and 2015, while still on supervised release, Brown found himself in the middle of another DEA drug investigation. During that investigation, DEA agents spoke to informants, tracked Brown's phone, and looked into his finances. In February and December 2014, agents conducted two money pick-ups from Brown's organization after an informant told agents that Brown needed money laundered. Agents then coordinated with Brown (via phone calls) for a meeting location and time for the money pick-up. An undercover agent or informant then picked up the money, in total, $336,960. (*See* Gov. Ex. 1, Supervised Release Violation Report, 99-cr-80035).

In December 2015, near the conclusion of the investigation, agents searched multiple residences connected to Brown. They did not find his drugs or drug money but did find evidence of drug trafficking. More specifically, in a Detroit condo that he shared with his girlfriend and young child, they found a money counter, drug packaging materials, latex gloves, and a loaded, stolen handgun with an obliterated serial number. While this evidence wasn't enough to charge Brown with a drug crime, it was sufficient to charge him for illegally possessing the gun. (*See United States v. Brown*, 16-cr-20195, ECF No. 1).

Following the search warrants, Brown – surmising that charges were

3

eminent – disappeared. It took months for the USMS Fugitive Task Force to locate Brown, as he had dropped all prior known phone numbers – including the phone number used to communicate with his U.S. Probation Officer regarding his supervised release. ▌▌▌▌▌▌ Brown also dropped his known social media account. *Id*.

Brown's claim that he was not "on the run" following the search warrants is disingenuous. (S*ee* ECF No. 139, pg. 20 (*filed under seal*); ECF No. 140, PageID.667-68). The Marshals repeatedly surveilled Brown's known locations without success and developed leads regarding Brown's whereabouts only after several weeks of investigation into his music label's activity. ▌▌▌▌▌ While Brown may not have had access to the sealed criminal complaint, he certainly knew he was the subject of a DEA investigation involving multiple search warrants at locations connected to him. He also was aware that evidence of his criminal activity was located at his Detroit condo in violation of his supervised release conditions.

On March 17, 2016, the Marshals eventually located Brown at a party at the Roostertail in Detroit, where he attempted to flee but was surrounded by law enforcement and arrested. ▌▌▌▌▌▌▌ ▌ he was released on bond while his federal gun case before Judge Edmunds, 16-cr-20195, was pending.





In May 2019, Brown pleaded guilty to being a felon in possession of a firearm. He also pleaded guilty to violating his supervised release conditions. (*See United States v. Brown*, 99-cr-80035, ECF No. 378).

After the initial sentencing, Brown remained on bond, and his surrender date

6

was adjourned seven times between May 2020 and March 2022.

### *Brown's Current Charges*

While on bond between March 2020 and May 2022 (

. Brown brazenly continued operating his own drug business. Brown's drug trafficking activity continued

to at least March 2024.

### *Two Kilograms of Black Tar Heroin in 2020*

In October 2020, in a separate and unrelated investigation of Joseph Twilley, Jr., DEA and FBI agents in Detroit intercepted calls under court ordered Title III

---

[1]

authority. On October 23, 2020, Twilley's California source of supply, Dorian Leniar, intercepted on (310) 804-5812, told Twilley he had two kilograms of black tar heroin, referred to as "black men," in Detroit. After speaking to a customer, Twilley told Leniar that he would take the two kilograms.

In this investigation of Brown, that began in May 2022 (described below), agents obtained Brown's iCloud which showed text messages with Leniar on October 23, 2020, to Leniar's same 5812 phone number, showing Brown as the source of the two kilograms of black tar heroin.

*Conversation between Brown and Leniar stored on Brown's iCloud*

**Conversation: iMessage;-;+13108045812**

**Messages**

Message 4 of 40

I thought me doing the two roofs would start me to cover what you were in

Outgoing Message sent by 13103595998 (13103595998)
Sent: 2020-10-24 02:52:31 (UTC)
Message ID: 42F975C1-C5C7-4FBC-9E5D-DAA41CDBE8E4

**Source File Hashes (MD5)**
DA8B132E783D11737A250E46E3C066DC

Leniar confirmed the "two roofs" meant the same black tar heroin, "2 roofs? The black dude."

Message 2 of 40

2 roofs ? The black dude

Incoming Message sent by 13108045812 (13108045812)
Sent: 2020-10-24 02:56:43 (UTC)
Read: 2020-10-24 03:01:51 (UTC)
Message ID: E79DB3BD-823C-43D5-99F0-7C7A91C8DA7D

**Source File Hashes (MD5)**
DA8B132E783D11737A250E46E3C066DC

**Black**

Outgoing Message sent by 13103595998 (13103595998)
Sent: 2020-10-24 03:02:01 (UTC)
Message ID: 2739222F-0768-4838-8609-01A42ECC53CD

**Source File Hashes (MD5)**
85C85C291B622735446968B9F0061980

On October 26, 2020, while listening to conversations between Leniar in California and Twilley and his associate Jason Harris in Detroit, investigators surveilled the exchange of black tar heroin at a Royal Grocery Store in Detroit. Leniar, in the intercepted calls, told Harris to meet with the person in the white Buick for the pickup. Agents watched a person from a white Buick drop off a grey plastic bag to Harris.

Following the exchange, agents executed search warrants and recovered the two kilograms of black tar heroin - one at Twilley's residence, and one at his customer, Todd Michael Dockery's, stash house. Dockery had picked up the kilogram of black tar heroin on the night of October 26, 2020, after Harris returned to Twilley's house with the two kilograms.



Agents previously saw Brown driving the same white Buick that was involved in the heroin exchange, and discovered that on April 1, 2022, it was titled to his co-defendant, Dominique Glenn.

### *iCloud Evidence Corroborating Brown's Ongoing Drug Trafficking Between 2020-2024*

Evidence from Brown's iCloud accounts also showed that Brown had been consistently trafficking kilogram-quantities of narcotics since at least 2020, while still on bond in his federal gun case ███████████████████████. His account contained photographs and videos of drugs, as well as hundreds of communications with co-defendants and other co-conspirators about the movement of drugs between 2020 and 2024.

Dating back to at least 2020, Brown communicated with his Mexican source, "Pancho," about obtaining drugs. (See exhibits below). They discussed third-party recipients and addresses for Brown to send drug proceeds in Sinaloa, Mexico. There was also communication referencing dollar bill serial numbers used as codes for bulk cash pick-ups and shipping receipts for packages.

*Communications from "Pancho" to Brown from Brown's iCloud – March 13, 2020*

💬 **Conversation: Mr. Brown, 5216674820101@s.whatsapp.net**

**Messages**

📄 **File Attachment**



| | |
|---|---|
| **Name** | **Mime Type** |
| 5a3921cd-0d1b-45b8-90c1-cc70b2467464.jpg | image/jpeg |

**Path**
Message/Media/5216674820101@s.whatsapp.net/5/a/5a3921cd-0d1b-45b8-90c1-cc70b2467464.jpg

**Content Hash (MD5)**
8A14C9FABEB5708709265A203E82519D

**Source File Hashes (MD5)**
8A14C9FABEB5708709265A203E82519D
3DCCFC8806B087E3D510849E36DC30C3

---

Message 327 of 846

**Those are the ones they got 2**

Incoming Message sent by 5216674820101@s.whatsapp.net (5216674820101@s.whatsapp.net)
Sent: 2020-03-13 00:45:07 (UTC)
Message ID: 3A729A2CB0C55E8F5B7AF7581997F561

**Source File Hashes (MD5)**
BB0A78CD0C0DEE808DACFD8E022BD5AB

---

Message 328 of 846

**Trust me man we will strart working really good have faith on me this people just need a little trust issue and u will see they know what i can doo they trust me**

Incoming Message sent by 5216674820101@s.whatsapp.net (5216674820101@s.whatsapp.net)
Sent: 2020-03-13 00:46:49 (UTC)
Message ID: 353649A368E05E72B7D22FB91C6612FF

---

Message 329 of 846

**I talk good about u and they said lets do thiss**

Incoming Message sent by 5216674820101@s.whatsapp.net (5216674820101@s.whatsapp.net)
Sent: 2020-03-13 00:47:17 (UTC)
Message ID: B9EB600D9D20689F9A1855327CEBE715

**Source File Hashes (MD5)**
3DCCFC8806B087E3D510849E36DC30C3

---

Message 330 of 846

**Ok cool**

Outgoing Message sent by Mr. Brown (13136704563@s.whatsapp.net)
Sent: 2020-03-13 00:47:29 (UTC)
Message ID: 3AA16227592211582337

11

*Communications with "Pancho" from Brown's iCloud – April 2020*



*Communications from "Pancho" to Brown from Brown's iCloud - September 2020*



Brown and "Pancho" consistently communicated about their drug trafficking operation into 2024. In the text communications below from June 2024, for example, Brown laments losing "product" and then having to get attorneys for his "people."

*Communications between Pancho (using +52 16674990927) and Brown (310-359-5998)*
*from Brown's iCloud – June 2024*



Additionally, Brown's iCloud stored messages with co-defendant, John Bryant ("OG"). These messages, which spanned several years and continued into 2024, included communications about drug distribution and photographs of multiple kilograms of cocaine and other drugs.

*Communications between Brown and Bryant from Brown's iCloud – March 2021*



Other messages between Brown and Bryant explicitly discussed the distribution of

methamphetamine (clear) and cocaine (girl) in July 2022 and cocaine in December

2023, as shown below.

14

*Incoming Text from Bryant to Brown – July 2022*

I have 24.5 here now I need clear & 1 girl

Incoming Message sent by 16232920114@s.whatsapp.net (16232920114@s.whatsapp.net)
Sent: 2022-07-06 16:50:58 (UTC)
Message ID: 459015CAE5912A2A888111101AAF3AD9

| **Facility** | **Source File Hashes (MD5)** |
|---|---|
| 202400825802-1407869 | 73A42723740073DBE24C7CE65C1934AF |

*Communications between Bryant (aka "Ace") and Brown – December 2023*

### 💬 Conversation: Mr. Brown, ace

**Messages**

Message 116 of 151

[IMAGE TRANSFER: File: 0143d898-14b0-486f-b09a-c3c1ebd92618.jpg (Type: jpeg)]

Outgoing Message sent by Mr. Brown (13136704563@s.whatsapp.net)
Sent: 2023-12-04 17:48:48 (UTC)
Message ID: 5EF44F53F6F323944084

**Source File Hashes (MD5)**
BB0A78CD0C0DEE808DACFD8E022BD5AB

**Attachments**

#### 📄 File Attachment



**Name**
0143d898-14b0-486f-b09a-c3c1ebd92618.jpg

**Mime Type**
image/jpeg

**Path**
495694515/1059063/bmbentertainment@icloud.com-1059063/iclouddrive/com.apple.CloudDocs/57T9237FN3~net~whatsapp~WhatsApp_Data/Accounts/13103595998/backup/Media.tar/Media/13139571059@s.whatsapp.net/0/1/0143d898-14b0-486f-b09a-c3c1ebd92618.jpg

**Content Hash (MD5)**
95543C1A7E65C26C464911E46A328075

**Source File Hashes (MD5)**
95543C1A7E65C26C464911E46A328075
BB0A78CD0C0DEE808DACFD8E022BD5AB



### *New DEA Investigation of Brown's DTO Begins in May 2022*

In May 2022, a DEA confidential source (CS) came forward with information about Brown's ongoing drug trafficking activities. The CS told agents that Brown was working directly with the Sinaloa Cartel to import drugs into the United States, consistent with the messages from his iCloud. The CS was aware that Brown distributed drugs on a national scale and estimated that he was responsible for moving more than 100 kilograms of largely heroin each month. The CS also knew that Brown managed numerous couriers and drug packagers in his various distribution hubs, including Detroit, Atlanta, Los Angeles, and locations in Kentucky, Ohio, and Tennessee.

In early 2023, DEA began physically and electronically surveilling Brown and his co-defendants, Dominque Glenn and Zion Speed. Through this

surveillance, investigators identified two suspected stash locations frequented by Brown, Glenn, and Speed – a house in Detroit and a condo in West Bloomfield – and confirmed the phone numbers used by Brown and other DTO members.

Communications dated June 13, 2023, showed continued narcotics trafficking from another Mexican source.

*Communications between Brown and "PSO" on Brown's iCloud – June 13, 2023*



Jun 13, 2023, 4:03 AM: Incoming Message from pso

**PS** You still in motion?
Jun 13, 2023, 4:03 AM: Incoming Message from pso

he dropping off 25 whenever you say you on your way with them he at the sls around corner **PA**
Jun 13, 2023, 5:14 AM: Outgoing Message from Pancho(flaco)

i'm here at the hiuse **PA**
Jun 13, 2023, 5:13 AM: Outgoing Message from Pancho(flaco)

he want five be he said just two know and when he checks them out he will get the other 3 **PA**
Jun 13, 2023, 5:13 AM: Outgoing Message from Pancho(flaco)

yes i just got here **PA**
Jun 13, 2023, 5:11 AM: Outgoing Message from Pancho(flaco)

*Photograph stored on Brown's iCloud – June 18, 2023*



Five days later, a photograph of a kilogram brick of narcotics was stored on Brown's iCloud (shown above). The metadata for the photo revealed that it was taken on June 18, 2023, by an iPhone in the area of Brown's West Bloomfield condo, consistent with narcotics referenced in the communications from June 13, 2023 being stored there.

### *Seizure in September 2023*

On September 15, 2023, while conducting surveillance at the West Bloomfield condo, investigators observed Brown exit the garage and place a black bag into the rear of a Chevy Traverse driven by co-defendant, Dominque Glenn. Brown spent several minutes moving items in the trunk before Glenn departed the

condo.

Investigators followed Glenn and stopped her for a traffic violation. During the stop, a K9 alerted to the presence of drugs in Glenn's car. Inside, investigators located a trap compartment containing three vacuum-sealed bricks that tested positive for more than three kilograms of cocaine.

Based on cell phone location data, investigators knew that Brown and Speed were following Glenn's car as she left the condo with the cocaine. During the traffic stop, investigators observed Brown and co-defendant, Zion Speed at a nearby parking lot watching the search of Glenn's car. Brown and Speed eventually returned to the West Bloomfield condo, and there, investigators saw Brown leave the condo with a large, weighted bag and enter an unknown sedan that arrived and quickly left. Co-defendant Demecko Motton came to the condo just after Brown left. Motton went inside briefly and left the condo carrying an item to his car. Speed, too, left the condo, carrying a grocery bag to his truck.

Both Motton and Speed were stopped by law enforcement just outside the condo complex and searched. Investigators found four kilograms of cocaine and ~1 kilogram of fentanyl split between Motton's person and a bag in his car. In Speed's truck, investigators located a kilogram of cocaine in same grocery bag they saw him carrying from the condo. They also located shipping labels and packaging materials.

After these additional drug seizures, DEA agents executed a search warrant at Brown's West Bloomfield condo. While no drugs were located inside, investigators found fans and air purifiers running and discovered that the basement and all tables in the condo appeared to have been recently wiped down with bleach. Investigators located mail addressed to Brown and his wife, Akia Brown, and noted that the streaming system on the master bedroom TV had profiles for Brown's kids. They also discovered multiple UPS Next Day Air boxes and shipping labels. These shipping labels tested positive for the presence of fentanyl, methamphetamine, xylazine, and amphetamine, consistent with drugs being sent through the mail.



*Mail addressed to Brian Brown and Akia Brown*
*at West Bloomfield stash house*

DEA agents seized multiple cell phones from Glenn, Motton, and Speed. A review of these devices revealed numerous drug-related communications between Brown, Glenn, and Speed, in particular. In these text communications, Brown

directed Glenn where to wire and deposit money (including individuals in Mexico and an account connected to Brown's music label – BMB Records). He also directed her where to pick up cutting agents. Similarly, in multiple texts, Brown directed Speed on how to mix and transport drugs. For example, in a text exchange from April 20, 2023, Brown directed Speed to mix and transport drugs to Demecko Motton (aka Meko).



- **Brown**: Take 250 of the bucket sand 700 of lactose and 50'o the chocolate. Mix extremely well.
- **Speed**: Only have 340 of lactose
- **Brown**: Well, use 150 sand and 25 chocolate
- **Speed**: Use all the lactose? Mix well and shake? Press?
- **Brown**: Yes.
- **Speed**: (thumbs up) Destination
- **Brown**: Meko
- **Speed**: Done deal

On Brown's iCloud, agents also located specific messages referencing the drug seizures on September 15, 2023, and the search of his West Bloomfield condo during the early morning hour of September 16, 2023.



they at my apartment now
Outgoing Message sent by 1313670456
Sent: 2023-09-16 04:32:19 (UTC)
Message ID: 3AC7360CBE970E65C755

[No Message Content]
Incoming Message sent by 13476197581@s.whatsap
Sent: 2023-09-16 02:55:54 (UTC)
Message ID: 3ADEE7992A1D41E4853A

dominique glenn
Outgoing Message sent by 1313670456
Sent: 2023-09-15 22:27:52 (UTC)
Message ID: 3A1A45A3F93F43663CC8

911
Outgoing Message sent by 1313670456
Sent: 2023-09-15 22:01:07 (UTC)
Message ID: 3A299E78B7216CC2F91C

*Brown's outgoing communications, stored on Brown's iCloud*

Agents also found a message where Brown asked co-defendant, John Bryant, to check into whether a warrant had been issued for him following the drug seizures.

Bro have sis check to see if I have a warrant
Outgoing Message sent by 13103595998 (13103595998)
Sent: 2023-09-20 05:17:06 (UTC)
Message ID: 4F7993E9-1640-4678-AB76-9B2281832D2C

**Source File Hashes (MD5)**
85C85C291B622735446968B9F0061980

To conceal his whereabouts, Brown dropped the phone numbers he had used to communicate with his co-defendants before the seizure and obtained new ones, just like he did in 2016. And then continued his drug trafficking activities.

22



*Seizure in December 2023*

Just three months after the seizure at the West Bloomfield condo, Brown

was the source of another ~50 kilograms of methamphetamine seized in

Indianapolis, Indiana. On December 19, 2023, three women were arrested leaving

the Indianapolis airport with ~50 kilograms of methamphetamine hidden in their

checked luggage.

Phones seized from the women after their arrests revealed that Brown had

hired them to package and fly the methamphetamine from Los Angeles to

Indianapolis for further distribution in the Midwest. In addition to text message

communications, metadata from photos found on the females' phones showed that

the drugs were packaged on December 18, 2023, near 8420 Blackburn Avenue in

Los Angeles. Phone location data for Brown's new cell phone placed Brown in the

area of 8420 Blackburn Ave. in Los Angeles on December 17-18, 2023, while

these drugs were packaged. Agents knew of Brown's association with the

Blackburn Ave. apartment because data from his iCloud showed that Brown

received items (in his name) from FedEx at this address, paid utility bills there and

was the lessee. In fact, the iCloud contained a notice from the lessors of the

Blackburn condo to Brian Brown, specifically, terminating the lease agreement on

May 17, 2024.



*Photo of bags of methamphetamine seized on December 19, 2023.*
*Metadata shows image captured at 8420 Blackburn Ave. in Los Angeles, CA.*

███████████████████████████████████████████

███████████████████████████████████████

*Money Laundering*

Between October 2020 and March 2024, Brown laundered more than $3 million (cash) in drug proceeds. He used the proceeds to support a lavish lifestyle – which included multiple residence in Michigan, California, Georgia, cars, motorcycles, and other expenses. During the investigation into Brown's drug trafficking operations, IRS agents discovered that Brown and his wife, Akia, had 23 bank accounts across multiple banks. These accounts were both personal and business accounts where they were the sole signors.

The accounts all had varying amounts of cash deposits, many of which were demonstrably structured with deposits on the same day totaling over $10,000 into the same account, different accounts, or even different banks. While comingled with some legitimate funds, the cash deposits were distinguishable from legitimate income related to Brown's music business and Akia's real estate business. For example, IRS-CI agents could identify legitimate funds, deposited in the form of checks, wire transfers and ACH deposits from known music companies such as Warner Music Inc., or real estate title companies, and separated those funds from the $3 million dollars in cash moving through Brian and Akia Brown's 23 bank accounts.

In addition to structuring cash deposits into his own accounts, Brown also used coconspirators' accounts to launder his drug proceeds. Brown had co-conspirators deposit drug proceeds into his account and their own accounts. Co-conspirators, including Glenn, would spend some of the money on themselves, and then directly wire money to Brown's accounts.

While reviewing Glenn's phone and Brown's iCloud, agents saw numerous texts of BROWN directing co-conspirators to deposit into various accounts.

| **Feb. 13, 2023** |
| --- |
| • GLENN: "bmb records llc of detroit checking 30232026" 11:44 a.m. |
| ▪ BROWN: "yes" 11:48 a.m. |
| ▪ GLENN: "Done at bank" 12:22 p.m. |
| ▪ BROWN: "excellent" 12:34 p.m. |

checking
Outgoing Message sent by Mr. Brown (13136704563@s.whatsapp.net)
Sent: 2023-08-02 14:36:34 (UTC)
Message ID: 3ABD9535C902C5677757

Brown Community Builders
Fifth Third
C-7932576171
Outgoing Message sent by Mr. Brown (13136704563@s.whatsapp.net)
Sent: 2023-08-02 14:36:29 (UTC)
Message ID: 3AC8417D9100ECD9AE13

### *Brown's Arrest and Dishonesty during Pretrial Services Interview*

Brown was indicted in December 2024. He was arrested and first appeared in duty court on December 16, 2024. When he was interviewed by Pretrial Services, Brown reported that his income was only $3,000 per month, coming from his BMB record label. ███████████████████████████████ He also said his wife provided some financial assistance. *Id*. However, a review of bank records from just one of his personal checking accounts at Navy Federal Credit Union (where Brown was the sole signor on the account) showed that from January 1, 2024, to November 30, 2024, Brown made cash deposits of approximately

26

$128,000. Indeed, in the eight months prior to his arrest, approximately $73,150 in cash was deposited into just this one bank account belonging to and controlled by Brown – far exceeding the $3,000 per month he reported to Pretrial Services as income.

Brown initially consented to detention in December 2024. He moved for bond in May 2025, had a hearing before Judge Altman in July 2025, and was ordered detained pending trial.

## II.    Argument

The factors under 18 U.S.C. § 3142(g) support Brown's detention. Where, as here, a defendant is subject to the statutory presumption of detention under 18 U.S.C. § 3142(e)(3), the defendant bears a "burden of production," requiring him to "come forward with evidence that he does not pose a danger to the community or a risk of flight." *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010). Even when the defendant satisfies his burden of production, the statutory presumption in favor of detention "remains a factor to be considered among those weighed by the district court." *Id.* This is because the presumption "reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained pending trial." *Id.* at 946.

Brown certainly falls into the "particular class of offenders" who should be detained, as contemplated by the presumption and the 3142(g) factors.

27

A.      Nature and Circumstances of the Offense Charged

The nature and circumstances of the charged offenses are extremely serious and support detention. As noted above, the statutory penalty and the presumption in favor of detention, alone, underscore the seriousness of these charges. But the circumstances of this case distinguish it from the other drug trafficking cases where these steep penalties also apply.

Brown is a high-level drug trafficker who worked directly with Mexico-based sources of supply to push poison into communities across the country. He has spent his entire adult life coordinating the distribution of the most lethal types of controlled substances (fentanyl and heroin) on a multi-state scale. Brown does not care about the lives he destroys by fueling drug addictions – only the money to be made. He has recruited many people to work for his criminal organization and has enriched himself at the expense of others and the safety of the community.

Disturbingly, Brown also engaged in the charged drug conspiracy conduct while still on bond and waiting to surrender in his last federal case. This Court need look no further than Brown's conduct on bond there to conclude that detention is necessary.

28





Moreover, from 2020 through 2022 (including between March 2020 and May 2022 when Brown was on bond, post sentencing in the federal gun case), Brown laundered more than $3 million of drug proceeds. IRS-CI agents analyzed the 23 bank accounts and found total cash deposits (separate from legitimate income described above) of $941,22.78 in 2020, $918,494 in 2021 and $1,122,314.33 in 2022. This activity further evidences the scale of his secret drug operation.

Unsurprisingly, Brown attempts to downplay his drug trafficking activity and on-going communication with Mexican sources . As detailed above, however, Brown facilitated the trafficking of at least 8 kilograms of cocaine, 1 kilogram of fentanyl, and more than 50 kilograms of methamphetamine in September 2023 and December 2023. These significant

seizures, involving the movement of drugs between multiple states, further speaks to the serious nature of Brown's charges.

### B. Weight of the Evidence of Dangerousness

The weight of the evidence of the defendant's dangerousness is strong. The Sixth Circuit "routinely affirms on dangerousness grounds, the pre-trial detention of run-of-the mill drug dealers, even without any indication that the defendant has engaged in violence." *United States v. Stone*, 608 F.3d 939, 947 (6th Cir. 2010). "Congress has determined 'that drug offenders pose a special risk of flight and dangerousness to society.'" *United States v. Gray*, 20 F. App'x 473, 475 (6th Cir. 2001) (quoting *United States v. Hare*, 873 F.2d 796, 798–99 (5th Cir. 1989)).

As discussed above, Brown is far from a "run-of-the-mill" drug dealer. He is the leader of a multi-state criminal enterprise that distributes large quantities of drugs on a national scale. Brown trafficked fentanyl, heroin, and methamphetamine – all highly potent and addictive drugs that are fueling the overdose epidemic. He also has laundered millions of dollars of drug proceeds attempting to conceal the true nature of his wealth to fund a lavish lifestyle.

Having spent decades trafficking drugs, Brown has proven himself to be a danger to the community. Further, there is a real risk that Brown continues drug trafficking and engaging criminal activity if granted bond, regardless of whether he's placed on tether or home confinement. He has repeatedly demonstrated just

31

how meaningless the court's conditions are to him. He's committed new criminal activity while on bond in <u>both</u> his prior federal cases – while on supervised release in one and on bond, post-sentencing in the other. In addition to being a danger, there is also a risk that Brown will not appear as directed, as he has shown himself to be untrustworthy and a habitual violator of court orders.

### C.    History and Characteristics of the Defendant

Brown's personal history and characteristics also weigh in favor of detention. After serving more than 12 years in prison for his prior drug trafficking conviction, he promptly returned to dealing drugs after his release in 2010. Neither a significant prison sentence nor being under court supervision was sufficient to deter Brown from continued criminal activity.

Brown presented many of the same letters of support in his original memorandum seeking bond. As before, Brown claims, through the various letters, that he is a man of "honesty, integrity, and peacefulness" (ECF No. 140, PageID.665), and therefore not a danger to the community. This is not well taken.

His conduct here and his criminal history are evidence to the contrary.

Clearly, Brown has family and friends who are unaware of how he spends much of his time. And sadly, his charitable work appears to be nothing more than a façade – because someone who truly cared about others would never poison the community to enrich himself. Additionally, the Court should be aware that Brown cited to his "Spirit of Detroit" award as mitigation at sentencing in his last federal case (*See United States v. Brown*, 16-cr-20195, ECF No. 45, PageID.115) – all while continuing to facilitate large-scale drug trafficking transactions. His continued criminal activity makes a mockery out of this award, and it is offensive that he points to it again as basis for pre-trial release.

> D.   Seriousness of the Danger to Any Person or Community if Defendant is Released

Drug trafficking is a dangerous crime, and it is not victimless. Drug trafficking and the subsequent use of drugs play a predominant role in the degradation of our communities and frequently contribute to violence. *See United States v. Green*, 532 F.3d 538, 549 (6th Cir. 2008). Releasing Brown endangers the community.

Brown has peddled poison across the nation for decades, prioritizing profit above all else. He has repeatedly violated the court's trust, and he cannot be trusted to comply with any terms of release.

**III.   No Set of Conditions Exist to Reasonably Assure Brown's Appearance and the Safety of the Community**

33

Both pre-trial services and the magistrate judge concluded that there is no set of conditions that would reasonably assure Brown's appearance and safety of the community. Brown previously requested a third-party custodian and asked that pre-trial services consider his wife and co-defendant, Akia Brown, or his sister, Nikki Brown. Pre-trial services found both candidates unsuitable. █████████

████████████████████████

Brown now asks the Court to consider Shirley Sutton, Akia's mother, who resides with Akia and the couple's children in the Northern District of Georgia. Ms. Sutton is not a suitable alternative. In declining to recommend the use of a third-party custody in June 2025, pre-trial made clear that it has "serious concerns" about the defendant's risk of nonappearance and danger to the community. ████

███████████████████████

No release condition – not home incarceration, home detention, a tether, nor a third-party custodian – will stop Brown from engaging in criminal activity. Facing a lengthy mandatory minimum sentence, Brown is also incentivized to flee should he be granted a bond.

Further, whether other lower-level co-defendants have adhered to their bond conditions has no bearing on the likelihood that Brown would adhere to his conditions. As evidenced by his criminal activity while on supervised release in 2014-2015 and his prolific, unsanctioned drug dealing while on bond in 16-cr-

20195, Brown believes that the rules do not apply to him. He has repeatedly shown the court that he is not a defendant to be trusted on bond.

### IV.    Conclusion

For the reasons stated above, Brown should be detained pending trial.

Respectfully submitted,

JEROME F. GORGON JR.
United States Attorney

*s/Caitlin B. Casey*
Caitlin B. Casey
Rajesh Prasad
Assistant United States Attorneys
211 W. Fort St., Suite 2001
Detroit, MI  48226
(313) 226-9769
Caitlin.Casey@usdoj.gov

Dated: April 28, 2026

## CERTIFICATE OF SERVICE

I hereby certify that on April 28, 2026, I filed the forgoing document with the Clerk of the Court of the Eastern District of Michigan using the ECF system under seal and sent the defendant's attorney a copy of the filing.

*s/Caitlin B. Casey*
Caitlin B. Casey
Assistant United States Attorney

36